# IN THE CIRCUIT COURTFOR PRINCE GEORGE'S COUNTY MARYLAND
## (Civil Division)

| | | |
|---|---|---|
| **CANDACE E. ALSTON**<br>10012 Cedar Hollow Lane<br>Largo, MD 20774 | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. _____<br>**JURY TRIAL DEMANDED** |
| **MONARCH BANK**<br>**Serve:** The Corporation Trust Incorporated<br>351 West Camden Street<br>Baltimore, MD 21201 | ) ) ) ) ) ) | CAL12 - 14515 |
| Defendant, | ) ) | |
| **DEBORAH W. LANE**<br>2809 S. Lynnhaven Parkway<br>Virginia Beach, VA 23452 | ) ) ) ) | |
| Defendant, | ) ) | |
| **AMY MCCARTHY**<br>2809 S. Lynnhaven Parkway<br>Virginia Beach, VA 23452 | ) ) ) ) | |
| Defendant. | ) ) | |

2012 MAY -4 PM 1: 45
PR GEO CO MD #73
Clerk of the Circuit Court

Case: CAL12-14515
NEW CASE/PRO SE
CV CLERK FEE—          80.00
MD LEGAL SERV          55.00
TOTAL                 135.00
Recd From      Rcpt # 44289
MBD    PLR    Blk # 465
May 04, 2012          01:37 PM

## COMPLAINT

COMES NOW the Plaintiff, Candace E. Alston, (hereafter the "Plaintiff") and for her

complaint against the Defendants Monarch Bank ("Monarch"), Deborah W. Lane ("Lane")

and Amy McCarthy ("McCarthy") alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for actual and statutory damages, costs and attorney's fees

brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*

(hereinafter "FDCPA"), Real Estate Settlement Procedures Act, 12 U.S.C. §2605 *et seq.*



1

(hereinafter "RESPA"), Truth-in-Lending Act, 15 U.S.C. §1601 *et seq.* (hereinafter "TILA"),

Maryland Consumer Protection Act, Md. Code . §13-101 *et seq.* (hereinafter "MCPA"), and

Maryland Consumer Debt Collection Act, Md. Code §14-201 *et seq.* (hereinafter

"MCDCA").

## PARTIES

2.      The plaintiff is a natural person and resides in Largo, Maryland. She is a

"consumer" as defined by the FDCPA, 15 U.S.C. §1692a(3), MCPA §13-101(c)(1) and a

"person" as defined by MCDCA, Md. Code. §14-201(d).

3.      Defendant Monarch originates, sells, and services residential loans. Monarch

is a "loan servicer," as defined in U.S.C. §2605(i)(2).

4.      Upon information and belief, Monarch Bank regularly collects or attempts to

collect debts for other persons.

5.      Defendant Lane is an accounting manager employed by Monarch.

6.      Defendant McCarthy is employed in Monarch loan servicing division.

## FACTS

7.      On or about November 12, 2010, Monarch originated a mortgage loan (the

"Debt" or "Note") for Ms. Alston to purchase 7929 Mandan Road, Unit 304, Greenbelt,

Maryland ("Property"). The debt arose from services provided primarily for family, personal

or household purposes and which meets the definition of a "debt" under 15 U.S.C.

§1692a(5).

8.      Upon information and belief Monarch quickly transferred the ownership and

servicing of the Debt to Wells Fargo Bank, NA on or about December 15, 2010.

9.     Upon information and belief the Government National Mortgage Association acquired ownership of the Debt subsequent to Wells Fargo acquisition of the loan.

10.    Wells Fargo declared Ms. Alston in default on February 1, 2011 and delinquent over 120 days as of November 2011.

11.    Upon information and belief Wells Fargo transferred the servicing rights back to Monarch in November 2011.

12.    Monarch reacquired the servicing rights of Ms. Alston's loan under the belief that her loan was in default. Monarch collected and/or attempted to collect the debt, and is a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. §1692a(6). Lane and McCarthy working as employees of Monarch collected or attempted to collect the debt, and is a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. §1692a(6). Defendants moreover engage in "communication" as defined at 15 U.S.C. §1692a(2) by using one or more instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the enforcement of security interests.

13.    In November 2011 Monarch sent Ms. Alston a welcome letter stating that Monarch is the new servicer. This letter did not state that Monarch was attempting to collect a debt, did not state the amount of the debt, did not identify the creditor, did not provide notice that Ms. Alston could request verification, and did not provide notice that the debt would be presumed valid if not disputed within 30 days. Monarch did not send a subsequent notice within 5 days of this letter providing the omitted information.

14.    On or about December 8, 2011 Monarch sent a letter falsely stating that Ms. Alston was late for her payment due 12/01/11. The letter further falsely asserted that late fees

3

and a NSF fee were due and illegally threatened to report her to the credit bureaus. The letter did not identify Monarch was a debt collector.

15.     On December 19, 2011 Ms. Alston sent a letter disputing that payment for 12/1/2011 was not received and disputing the validity of the late charges and NSF fees. Ms. Alston further asked for record of payments and the identity of the investor.

16.     The December 19, 2011, letter provided a statement of the reason(s) the Plaintiff believed that the account was in error and sufficient detail of the nature of the problem and the information sought by the Plaintiff ("Plaintiff's first qualified written request").

17.     In correspondence received on December 24, 2011 Monarch responded to Ms. Alston's December 19, 2012 letter by including an Account Activity description with its January mortgage statement. The Account Activity description enumerated the payments, fees and charges applied to the account but provided no explanation for the fees and charges. Monarch did not correct the late charges or NSF fee and did not address the ownership of the Note. Monarch did not disclose that it was a debt collector.

18.     On January 9, 2012 Ms. Alston sent check 213 for January's payment.

19.     On January 9, 2012 Ms. Alston also sent a letter to Debbie Lane disputing the charges assessed in the January mortgage statement. She also repeated her request for the identity of the owner of the loan.

20.     The January 9, 2012, letter provided a statement of the reason(s) the Plaintiff believed that the account was in error and sufficient detail of the nature of the problem and the information sought by the Plaintiff ("Plaintiff's second qualified written request").

21.     Plaintiff received no response to her second qualified written request.

22.    On January 10, 2012 Defendant McCarthy sent a letter claiming Ms. Alston breached the loan agreement. McCarthy falsely stated that Ms. Alston did not make December's monthly mortgage payment. McCarthy further falsely stated that Ms. Alston could only pay in certified funds. In fact Monarch was in receipt of Ms. Alston's personal check for December's payment. McCarthy also illegally threatened to accelerate the loan, to sale the property, and to assess attorney's fees and legal expenses. McCarthy did not disclose that she was a debt collector.

23.    On Jan 17, 2012 Defendant Monarch sent February's mortgage statement, which falsely represented that Ms. Alston did make her mortgage payments for December and January. The statement further falsely asserted that $2,536.76 was due for February's payment. The statement also falsely asserted that Ms. Alston issued a nonsufficient funds check and assessed a NSF fee of $40. Monarch did not disclose that it was a debt collector.

24.    On Jan 19, 2012 Monarch sent the Mortgage Interest Statement for 2011. The statement falsely asserted that Ms. Alston only paid $3,804.86 in interest payments, which inferred Ms. Alston only made 10 mortgage payments, not 12 mortgage payments, in 2011. The statement did not disclose that it was a debt collector.

25.    On January 31, 2012 Ms. Alston sent Monarch a letter requesting a payoff statement and an accounting of the loan payments. Ms. Alston also asked for a current copy of the Note and a date to inspect the original Note.

26.    On February 7, 2012 Defendant Lane sent a letter enclosed with a payoff statement, loan payment history and a certified true copy of the Note. The payoff statement falsely asserted due a late charge payment of $62.16 and a NSF fee payment of $40.00. For

no apparent reason Lane made an illegal threat to report Ms. Alston to the credit bureaus. Lane did not disclose that she was a debt collector.

27.     On February 15, 2012 Ms. Alston sent a letter to Lane stating that she was disputing the account and not to report the loan delinquent while the account was in dispute. Ms. Alston further stated that she was in the process of refinancing the loan.

28.     On February 21, 2012 Defendant Lane sent a letter stating Monarch would not assess a late charge or report her late to the credit bureau. In her letter Lane falsely claimed that Monarch was the owner and "holder" of the note. Lane did not disclose that she was a debt collector.

29.     On March 2, 2012 Ms. Alston sent Lane a letter stating that she was not able to refinance the loan due to Wells Fargo reporting her 120 days late. Enclosed with the letter were two separate checks for February and March payments.

30.     On March 5, 2012 Defendant McCarthy sent a letter falsely claiming Ms. Alston breached the loan agreement. McCarthy falsely stated that Ms. Alston did not make February's monthly mortgage payment. The letter illegally threatened to accelerate the loan, to sale the property, to assess attorney's fees and legal expenses. McCarthy further falsely stated that Ms. Alston could only pay in certified funds. In fact Monarch agreed in prior communication not to treat the loan as in default and was in receipt of Ms. Alston's February payment prior to March 5, 2012. McCarthy did not disclose that she was a debt collector.

31.     On March 19, 2012 Monarch sent April's mortgage statement, which removed the late charges but continued to falsely claim Ms. Alston owed a fee for issuing a nonsufficient fund check. The statement did not disclose that Monarch was a debt collector.

6

32.     On March 22, 2012 Defendant Lane sent a letter illegally threatening to report her to the credit bureaus for no reason. Lane did not disclose that she was a debt collector.

### COUNT ONE: VIOLATIONS OF THE FEDERAL DEBT COLLECTION PRACTICES ACT
(as to All Defendants)

33.     Plaintiff realleges and incorporates paragraphs 1 through 32 above as if fully set out herein.

34.     Defendants violated the FDCPA in one or more of the following ways, without limitation:

　　a.     By misrepresenting the legal status of the debt (15 U.S.C. §§1692(e) and (f));

　　b.     By misrepresenting the compensation which they could lawfully receive (15 U.S.C. §§1692(e) and (f));

　　c.     By threatening to report Plaintiff to the credit bureau when no right existed for such action (15 U.S.C. §§1692(e) and (f));

　　d.     By threatening action to accelerate the loan and foreclose upon Plaintiff's real property when such action was not lawful and/or at a time when no condition precedent existed to authorize such action (15 U.S.C. §§1692(e) and (f));

　　e.     By collecting or attempting to collect amounts in the debt not authorized by the loan or by law (15 U.S.C. §1692(f)); and

　　f.     By failing to provide the warnings, disclosures and notice required by the FDCPA (15 U.S.C. §§1692(e) and (g));

7

35.     As a result of the conduct, actions and inactions of Defendants, the Plaintiff feared losing her home and good credit rating. Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket expenses, frustration, upset, anger, humiliation and severe emotional and mental distress.

36.     Defendants conduct were the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1692k(a)(1), statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

## COUNT TWO: VIOLATIONS OF THE REAL
## ESTATE SETTLEMENT PROCEDURES ACT
### (as to Defendant Monarch)

37.     Plaintiff realleges and incorporates paragraphs 1 through 36 above as if fully set out herein.

38.     Monarch willfully violated RESPA in one or more of the following ways, by example only and without limitation:

a.     By failing to acknowledge receipt of and to respond to the Plaintiff's dispute letter in the time manner required by the RESPA (12 U.S.C. 2605(e)(1)(A) and (e)(2));

b.     By failing to make appropriate corrections in the Plaintiff's account and transmit written notification of such correction to the Plaintiff (12 U.S.C. 2605 (e)(2)(A));

c.     By failing to provide the Plaintiff with a written explanation or clarification that includes a statement of the reasons that Monarch believed the Plaintiff's account to be correct (12 U.S.C. 2605(e)(2)(B); and

d. By failing to provide the Plaintiff with a written explanation or clarification that included the information requested by the Plaintiff or an explanation of why the information requested was unavailable or could not be obtained by Monarch (12 U.S.C. §2605(e)(2)(C).

39. As a result of the conduct, actions and inactions of Defendant Monarch, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket expenses, frustration, upset, anger, humiliation and severe emotional and mental distress.

40. As a result of the aforesaid violations of RESPA, Monarch is liable to Plaintiff for:

a. Actual damages in an amount to be determined at trial pursuant to 12 U.S.C. §2605(f)(1)(A);

b. Additional statutory damages in the amount of $2,000.00 pursuant to 12 U.S.C. §2605(f)(1)(B); and

c. Reasonable attorneys' fees and the costs of litigation pursuant to 12 U.S.C. §2605(f)(3).

## COUNT THREE: VIOLATIONS OF THE TRUTH IN LENDING ACT
### (as to Defendant Monarch)

41. Plaintiff realleges and incorporates paragraphs 1 through 40 above as if fully set out herein.

42. In the alternative if Defendant Monarch Bank owns the debt and is not a debt collector then Monarch Bank violated TILA, 15 U.S.C. §1641(g) by failing to provide the following required disclosures:

a.    the date of transfer;

b.    contact information for an agent or party having authority to act on

behalf of the new creditor; and

c.    the location of the place where transfer of ownership of the debt is

recorded.

43.    As a result of the aforesaid violations of TILA, Monarch is liable to Plaintiff

for:

a.    Actual damages in an amount to be determined at trial pursuant to 15

U.S.C. §1640(a)(1);

b.    Additional statutory damages in the amount of no less than $400.00

pursuant to 15 U.S.C. §1640(a)(2)(A); and

c.    Reasonable attorneys' fees and the costs of litigation pursuant to 15

U.S.C. §1640(a)(3).

## COUNT FOUR: VIOLATIONS OF THE MARYLAND
## CONSUMER DEBT COLLECTION ACT
### (as to all Defendants)

44.    Plaintiff realleges and incorporates paragraphs 1 through 43 above as if fully

set out herein.

45.    Defendant Monarch Bank's loan to Plaintiff is a "consumer transaction"

within the meaning of the MCDCA, §14-201(c) and Defendants Monarch Bank, Lane and

McCarthy are "collectors" within the meaning of MCDCA, §14-201(b).

46.    Defendants violated MCDCA, §14-202(8) on multiple occasions by claiming,

attempting, or threatening to enforce a right that does not exist:

a.    attempting to collect late fees;

b.      attempting to collect a NSF fee;

c.      attempting to collect $2,536 for February's payment;

d.      threatening to report Ms. Alston to the credit bureaus; and

e.      threatening to accelerate the loan and foreclose on the Property.

47.     As a result of the conduct and actions of the Defendants, the Plaintiff feared losing her home to a foreclosure sale and losing her good credit rating. Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket expenses, frustration, upset, humiliation and severe emotional and mental distress.

48.     Defendants' conduct were the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages in an amount to be determined by the jury pursuant to MCDCA, §14-203.

**COUNT FIVE: VIOLATIONS OF THE**
**MARYLAND CONSUMER PROTECTION ACT**
**(as to all Defendants)**

49.     Plaintiff realleges and incorporates paragraphs 1 through 48 above as if fully set out herein.

50.     Defendant Monarch Bank's loan to Plaintiff is a "consumer debt" within the meaning of the MCPA, §13-101(d). Defendants are "persons" within the meaning of MCPA, §13-101(c)(1) and Plaintiff is a "consumer" within the meaning of MCPA, §13-101(h).

51.     Defendants violations of MCDCA §14-202 are violations of MCPA, §13-301(14)(iii).

52.     Defendants violated MCPA, §13-303(5) on multiple occasions by engaging in deceptive and unfair trade practices in the collection of the debt by:

a.    claiming fees not due or authorized;

b.    seeking to collect inflated mortgage payments;

c.    threatening to foreclose to coerce an unlawful payment; and

d.    making unauthorized alterations to Ms. Alston's checks

53.    Defendant Monarch Bank violated MCPA, §13-316(b),(c) on multiple

occasions by:

a.    failing to respond within 15 days to Ms. Alston's letter dated January
      9, 2012;

b.    failing to state the principal balance and escrow balance within 7 days
      of acquiring the mortgage servicing;

c.    failing to provide a contact *person* to direct complaints and inquiries;

d.    failing to state the responsibilities of the contact *person*;

e.    failing to contain a statement that Monarch's violation of §13-316 will
      result in the servicer being liable for any economic damages; and

f.    failing to provide a toll-free telephone number for Plaintiff to direct
      telephone inquiries.

54.    As a result of the conduct, actions and inactions of Defendants, the Plaintiff

feared losing her home to a foreclosure sale and expended money consulting with legal

professionals about this matter. Plaintiff suffered actual damages including without

limitation, by example only and as described herein by Plaintiff: out-of-pocket expenses,

frustration, upset, humiliation and severe emotional and mental distress.

55.    Defendants conduct were the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages in an amount to be determined by the jury pursuant to MCDCA, §13-408(a) and for attorney's fees pursuant to MCDCA, §13-408(b).

WHEREFORE, your Plaintiff demands judgment for actual and statutory damages against Defemdants; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief as the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

**CANDACE E. ALSTON**

By _Candl_

Candace E. Alston
10012 Cedar Hollow Ln
Largo, MD 20774
(240) 432-0927